Date signed March 16, 2011



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

| | | |
|---|---|---|
| In re: | * | |
| Brian Shepard and | * | Case No. 09-17489 |
| Manjot Bains-Shepard, | * | |
| | * | |
| Debtors | * | Chapter 7 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| 10 W. Chase, LLC, | * | |
| a Maryland Limited Liability Company, | * | |
| Plaintiff | * | |
| v. | * | Adv. Pro. No. 09-00693 |
| | * | |
| Brian Shepard and | * | |
| Manjot Bains-Shepard, | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OF DECISION

Plaintiff 10 W. Chase, LLC ("Plaintiff") missed the deadline for filing a complaint objecting to the discharge or determining the dischargeability of the debt of Debtors-Defendants Brian Shepard and Manjot Bains-Shepard ("Defendants"). Plaintiff brings this adversary proceeding seeking, among other things, to revoke Defendants' discharge under §727(d) of the Bankruptcy Code and pursuant to Fed. R. Civ. P. 60. Defendants filed a motion to dismiss or in

1

the alternative for summary judgment (the "Motion"), which seeks dismissal of Count I (the revocation of Defendants' discharge), and contend that if Count I is dismissed, the Court must dismiss Count IV (breach of fiduciary duty) and Count V (conversion, misappropriation and embezzlement) to the extent those counts seek personal relief against them.  Docket No. 34.[1] The Motion is opposed by Plaintiff.  Docket No. 36.   The Court has reviewed the parties' filings and considered the arguments presented at the hearing on October 8, 2010.  For the reasons set forth herein, the Court will grant the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (O).

**BACKGROUND AND PROCEDURAL HISTORY**

The Background and Procedural History is not in dispute and is taken primarily from the docket in Defendants' bankruptcy case and this adversary proceeding.

Defendants filed a joint petition under Chapter 7 on April 28, 2009.  The Clerk's Office scheduled a meeting of creditors under Section 341 of the Bankruptcy Code[2] for June 3, 2009.

The Clerk issued a notice of the bankruptcy case on May 1, 2009.  *See* Docket No. 10 in Case No. 09-17489.  The notice expressly stated that the deadline to file a complaint objecting to discharge or to determine dischargeability of a debt was August 3, 2009.  *Id*.  The notice was sent to Plaintiff as well as Gerald Waldman,  *id*., p. 3, and it is undisputed he is the managing member of Plaintiff.  Plaintiff does not contend that it did not receive timely notice of the

---

[1] All citations to Docket Nos. are to the docket in this adversary proceeding unless otherwise noted.

[2] All statutory references herein are to the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as currently in effect.

bankruptcy case or the deadline to file a complaint objecting to discharge or to determine dischargeability of debts.

There is no dispute between the parties that the meeting of creditors was held on June 3, 2009.

On June 10, 2009, Anthony Wilson, an attorney, filed a document entitled "Notice of Objection" (the "Notice of Objection"). Docket No. 37 in Case No. 09-17489. The Notice of Objection was filed on behalf of "10 W. Chase LLC, SB Fleet LLC, Dona Burney and Gerald Waldman." Notice of Objection, p.1. It contends that Debtor Brian Shepard "committed … fraud, misappropriation of funds, misrepresentations, and other unlawful acts…" *Id*. It states that "[i]n light of [the] Debtors [sic] misconduct, the bankruptcy petition should not be granted." *Id*. The "Wherefore" clause states that "Creditors by Notice of Objection petitions [sic] this Court to reject the bankruptcy petition." *Id.*, p. 4.

Two days later, on June 12, 2009, this Court entered an order striking the Notice of Objection (the "Striking Order"). Docket No. 38 in Case No. 09-17489. The Striking Order struck the Notice of Objection for several reasons. First, by requesting that the Court "reject the bankruptcy petition," the Notice of Objection did not seek a recognized form of relief. Second, the Notice of Objection violated the Local Rules and was not in the form of a motion. Third, because the Notice of Objection failed to cite any authority, whether statutory, case law or otherwise, it failed to comply with the Local Rule requiring that points and authorities be filed with a motion. Fourth, it was improperly filed in paper form, rather than the electronic format required by this Court's procedures. At the time the Court struck the Notice of Objection, fifty-one days remained during which a creditor could file a timely complaint to determine dischargeability of debt or object to discharge.

3

Plaintiff failed to file a complaint to determine dischargeability of debt or object to discharge by the August 3, 2009 deadline. On August 5, 2009, Defendants received their discharge under §727.

On October 7, 2009, Plaintiff filed a Complaint to Revoke Discharge for Declaratory Relief to Determine Interest in Real Property and to Recover Property and Avoid Transfer (the "Complaint"), thereby initiating this adversary proceeding. The Complaint did not seek a determination that any debt owed by Defendants to Plaintiff would be excepted from discharge, although it did raise claims of fraud and breach of fiduciary duty.

On November 4, 2009, Plaintiff filed its Motion to Amend Complaint, and for the first time sought a determination of the dischargeability of its debt. Docket No. 4. Plaintiff requested that the proposed amended complaint be deemed an amendment to the Notice of Objection such that the nondischargeability claim asserted in the proposed amended complaint would relate back to the stricken Notice of Objection and thereby be timely filed. The Court denied that motion for the reasons set forth in a Memorandum of Decision Denying Motion for Leave to File Amended Complaint entered on January 7, 2010. Docket No. 15.

Plaintiff subsequently filed its Second Motion for Leave to File Amended Complaint (the "Second Motion"), Docket No. 20, noting its original request for revocation of Defendants' discharge, pursuant to 11 U.S.C. §727(d),[3] and seeking to add Fed. R. Bankr. P. 9024 ("Rule 9024") as an additional basis for revocation. On June 16, 2010, the Court entered its Order Granting in Part and Denying in Part Plaintiff's Second Motion for Leave to File Amended Complaint (Docket No. 29), without prejudice to Defendant's rights to challenge the proposed

---

[3] This statutory basis is restated in the Amended Complaint. Although Plaintiff does not specify the subsections of §727(d) which allegedly entitle it to relief, the text of the Amended Complaint implicates §§727(d)(1) and (2). *See* Amended Complaint, p. 9, ¶ 50.

amended complaint.   Plaintiff then filed the Amended Complaint to Revoke Discharge, for Declaratory Relief to Determine Interest in Real Property and to Recover Property and Avoid Transfer (the "Amended Complaint") on June 16, 2010.  This Motion followed.

**FACTS AS ALLEGED IN THE AMENDED COMPLAINT**

The Amended Complaint asserts a number of allegations which Plaintiff contends supports its claim that Defendants' discharge should be revoked.  Those allegations can be categorized as follows:

- *Fraud in connection with 10 W. Chase.*

- *Failure to disclose the Waldman Trust Loan.*

- *The property owned by MBS.*

- *Defendants' claim for architectural fees.*

- *The real estate commission.*

- *Failure to produce books and records of 10 W. Chase LLC*

The specific allegations underpinning these claims will be addressed more fully in the Conclusions of Law as appropriate.

**CONCLUSIONS OF LAW**

As stated above, Plaintiff missed the deadline for filing a complaint seeking the determination of the dischargeability of its debt or objecting to Defendants' discharge under Bankruptcy Rules 4004(a) and 4007(c).[4]   Plaintiff initially tried to rectify the effect of that

---

[4] Those Bankruptcy Rules provide:

Rule 4004. Grant or Denial of Discharge
    (a) Time for objecting to discharge; notice of time fixed
        In a chapter 7 case, a complaint, or a motion under § 727(a)(8) or (a)(9) of the Code, objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). In a chapter 11 case, the complaint shall be filed no later than the first date set for the hearing on confirmation. In a chapter 13

oversight by seeking unsuccessfully to amend the stricken Notice of Objection with a complaint objecting to discharge. *See* Docket Nos. 4 and 15. In this second effort, Plaintiff seeks an order revoking Defendants' discharge pursuant to §727(d)(1) and (2) or Fed. R. Civ. P. 60(b).

Plaintiff's §727(d) claims fail because Plaintiff knew of the essential facts on which those claims are based well before the deadline for objecting to discharge, which is established on the face of the complaint and from the docket in the bankruptcy case. Plaintiff's Rule 60(b) claim, at its core, seeks relief based on its prior counsel's oversight in failing to timely file a complaint under Bankruptcy Rule 4004(a) objecting to discharge. But under the standards established by the Fourth Circuit Court of Appeals and in accordance with Bankruptcy Rule 9006(b), this claim also fails. These matters will be addressed further below.

**Revocation of Defendants' Discharge pursuant to §727(d).**

The motion is brought under Fed. R. Civ. P. 12 (b)(6), which applies in adversary proceedings pursuant to Fed. R. Bankr. P. 7012(b). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir.

---

case, a motion objecting to the debtor's discharge under § 1328(f) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). At least 28 days' notice of the time so fixed shall be given to the United States trustee and all creditors as provided in Rule 2002(f) and (k) and to the trustee and the trustee's attorney.

Rule 4007. Determination of Dischargeability of a Debt

(c) Time for filing complaint under § 523(c) in a chapter 7 liquidation, chapter 11 reorganization, chapter 12 family farmer's debt adjustment case, or chapter 13 individual's debt adjustment case; notice of time fixed.

Except as otherwise provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly* ("*Twombly*")*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see also Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

The Supreme Court summarized the *Twombly* standard in *Ashcroft v. Iqbal*, __ U.S. __; 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 (brackets omitted).

*Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*). As further guidance, the Supreme Court noted that the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1937 (citation omitted).

In resolving the §727(d) claims, the Court will take into account two matters outside the Amended Complaint: the transcript of the meeting of creditors and the Notice of Objection. The Amended Complaint refers to the meeting of creditors a number of times, *see* Amended Complaint ¶¶ 23, 24, 29, 36, and relies on statements made at the meeting to support the §727(d) counts. The Amended Complaint also refers to the Notice of Objection. *Id*. at ¶¶ 40, 41. To the extent the Court's review of these matters cited in the Amended Complaint should cause the motion to be resolved under Fed. R. Civ. P 56, pursuant to Fed. R. Civ. P. 12(d),[5] the Court would not reach different conclusions than those contained herein.[6]

---

[5] Fed. R. Civ. P. (12)(d) provides:
> (d) Result of Presenting Matters Outside the Pleadings.
> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The Motion contemplated the alternative relief of summary judgment. The parties were given a reasonable opportunity to present all material that is relevant to the Motion as required by this rule.

[6] The standards for summary judgment are well established:

> In bankruptcy, summary judgment is governed in the first instance by Federal Rule of Bankruptcy Procedure 7056, which expressly incorporated into bankruptcy proceedings the standards of Federal Rule of Civil Procedure 56. A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex*, 190 F.3d at 633. In doing so, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*In re French*, 499 F. 3d 345, 351-352 (4th Cir. 2007).

**Section 727(d)(1).**

Plaintiff seeks to revoke Defendants' discharge pursuant to §727(d)(1). That section provides:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

11 U.S.C. §727(d)(1). The party seeking revocation bears the burden of proving that they did not know of the alleged fraud until after the discharge was granted, "and failure to carry this burden is fatal to the party's case." *Collier on Bankruptcy* (16th Ed. Revised 2010), ¶ 727.17[3]; *see also In re DaMaia*, 217 F.3d 838 (4th Cir. 2000) (table case) ("party requesting revocation of a discharge has the burden of proving its lack of knowledge of the fraud before discharge, and failure to carry this burden is fatal to the party's case."). As the Eighth Circuit phrased it, the majority of courts agree that "dismissal of a §727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of possible fraud." *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir. 1991). Furthermore, the "did not know" standard includes the burden "to investigate diligently any possibly fraudulent conduct before discharge." *Id*.; s*ee also In re Vereen*, 219 B.R. 691 (Bankr. D.S.C. 1997).

Moreover, as the Fourth Circuit has held

> Revocation of a debtor's discharge is an extraordinary remedy. *Miller v. Kasden (In re Kasden), 209 B.R. 239, 241 (8th Cir. BAP 1997)*. "Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *Grochocinski v. Eckert (In re Eckert), 375 B.R. 474, 478 (Bankr. N.D. Ill. 2007)*, quoting *State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600, 603 (Bankr. N.D. Ill. 1996)*. "The statute is construed strictly against the party seeking revocation and liberally in the debtor's favor." *Pierce v. Fuller*

9

> *(In re Fuller), 356 B.R. 493, 495 (Bankr. D.S.D. 2006)*, citing *Kaler v. Olmstead (In re Olmstead), 220 B.R. 986, 993 (Bankr. D.N.D. 1998).*

*In re Jordan*, 521 F.3d 430, 433 (4th Cir. 2008). The Court will apply these standards to the allegations in the Amended Complaint.

 *Fraud in Connection with the 10 W. Chase.* Plaintiff alleges that while Defendant Brian Shepard ("Shepard") was the managing member of Plaintiff, he caused Plaintiff to enter into a loan agreement with Columbia Bank (the "Bank") and misappropriated and converted the loan funds to Defendants' personal use. Plaintiff alleges that Shepard submitted construction draws to the Bank which were "supported by fraudulent documentation or not supported at all" and that the scheme was perpetuated by applying some of the construction draws toward interest payments to keep the loan current. Plaintiff further alleges that at least seventy-three (73) of the construction draws were converted by Shepard to Defendants' personal use or for the use of MBS Properties, LLC ("MBS"), an entity of which Defendants are 100% owners, and that over fifty (50) construction draws were converted by Shepard for the use of SB Fleet, LLC. *See* Amended Complaint, ¶¶ 8-17.

 Plaintiff's allegations concerning the 10 W. Chase construction project fail to state a claim under §727(d)(1). Plaintiff was aware of Defendants' alleged misconduct no later than June 10, 2009 when it (along with SB Fleet LLC, Dona Burney and Gerald Waldman) filed the Notice of Objection, making virtually the same allegations against Defendants.[7] *See supra* p. 3. *See also* Docket No. 37 in Case No. 09-17489. The Notice of Objection was filed and stricken more than seven weeks before the deadline for filing a timely complaint objecting to discharge or for determination of dischargeability, giving Plaintiff more than enough time to file an

---

[7] As explained in the Background and Procedural History, the Notice of Objection was stricken on June 12, 2009. Docket No. 38 in Case No. 09-17489.

appropriate complaint under §523 or §727, and certainly ample time to investigate diligently the bases for its accusations of misconduct by Defendants.

Specifically, the Notice of Objection made the following allegations, which continue to form the basis of the claims in the amended complaint concerning the 10 W. Chase construction project:

- Shepard committed multiple acts of fraud, misappropriation of funds, misrepresentations and other unlawful acts to which 10 W. Chase, LLC and SB Fleet, LLC were victims. Notice of Objection, p.1.

- Shepard was the managing partner with sole responsibility for handling financial matters for 10 W. Chase, LLC and SB Fleet, LLC until he filed his bankruptcy petition. *Id.*, p. 2.

- Shepard failed to produce and wrongfully withheld the books and records of 10 W. Chase, LLC and SB Fleet, LLC. *Id.*

- The Bank made loans to 10 W. Chase, LLC and SB Fleet, LLC. Shepard fraudulently submitted false construction advance requests to the Bank and then diverted construction draw monies from these loans to unknown uses. *Id.*, p. 3.

- In addition, Shepard and his wife organized MBS in secret and obtained $1 million in secret loans from the Bank. Shepard obtained these loans by granting cross-default protection to the Bank from 10 W. Chase, LLC and SB Fleet, LLC. Thus, MBS became another mechanism used by Shepard to commit fraud against 10 W Chase, LLC. *Id.*

- Shepard wrote an unusual number of checks to himself, to cash and/or for the payment of personal and/or household bills for himself and/or his wife. Shepard routinely removed large sums of money under the ruse of material reimbursements and, on least one occasion, transferred funds directly to the checking account of MBS from SB Fleet, LLC. *Id.*

As it relates to 10 W. Chase, LLC and the §727(d)(1) claim, the Amended Complaint alleges the following fraudulent schemes: (1) Shepard used false construction draws to obtain proceeds of the Bank's loans to 10 W. Chase, LLC and diverted those funds for other uses; (2) Shepard secretly obtained loans to his company, MBS, by granting cross-default protection to the Bank from 10 W. Chase, LLC and SB Fleet, LLC; and (3) Shepard routinely took large sums of money from 10 W. Chase, LLC for his own gain. These allegations were unquestionably

11

known to Plaintiff well before the deadline for objecting to discharge, as plainly established by

the Notice of Objection.[8]  In fact, the Amended Complaint admits that the Notice of Objection

set forth "many of the facts relating to Defendants' pre-petition fraudulent conduct as described

[therein]."    Amended Complaint, ¶ 40.    Accordingly, Plaintiff's allegations of fraud in

connection with 10 W. Chase, LLC do not provide an avenue for relief under §727(d)(1).

  *Failure to Disclose the Waldman Trust Loan*.    The Amended Complaint alleges that

Defendants failed to include "in the Petition [sic]" a loan made in June 2006 to Defendant Brian

Shepard in the original principal amount of $110,000 by the Gerald Waldman Revocable Trust.

*See* Amended Complaint, ¶ 33.   It also alleges that Defendants failed to list "in their Petition

[sic]" the Waldman Trust as a creditor.  *Id*., ¶ 34.

  In their Schedule F,[9] Defendants listed four claims for Gerald Waldman in the amounts of

$241,500, $185,000, $165,000 and $28,000.   *See* Docket No. 19 in Case No. 09-17489, p. 18.

Defendants also listed Gerald Waldman on the initial creditor matrix.   *See* Docket No. 1 in Case

No. 09-17489, p. 15.  There is no dispute that the address of Gerald Waldman is correct and that

he obtained actual notice of this case no later than early June 2009.  *See* Notice of Objection,

filed on behalf of Mr. Waldman, among others.  Defendants also listed a Charles Roberts as an

---

[8]  The Amended Complaint alleges that Shepard obtained the loan advances by using the name of "Sawgrass" Consultants, LLC., which is alleged to be a false company name, and Plaintiff did not learn about the use of "Sawgrass" until after the deadline for filing a complaint to determine dischargeability or objecting to discharge. Amended Complaint, ¶ 31.  But in the Notice of Objection, Plaintiff specifically alleged that Shepard "submitted false construction advance requests …and then diverted the draw monies…."  Notice of Objection, p. 3.  The alleged fraud for purposes of §727(d)(1) is that Shepard used false construction draws to obtain proceeds of the Columbia Bank loans to 10 W. Chase, LLC, and otherwise took large sums from 10 W. Chase, LLC, and diverted those funds for other uses.  Not knowing the name of the entity allegedly used by Shepard does not mean that Plaintiff "did not know of such fraud" before the deadline for objecting to discharge.  11 U.S.C. §727(d)(1).  Stated otherwise, Plaintiff certainly knew "facts such that he or she is put on notice of possible fraud."  *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir. 1991).

[9]  Since specific debts and creditors are not listed "in the Petition" the Court assumes Plaintiff means in Defendants' schedules.

additional person for notification for Gerald Waldman on both the creditor matrix and Schedule F. *See* Docket No. 1 in Case No. 09-17489, p. 13 and Docket No. 19 in Case No. 09-17489, p. 18. Also, Mr. Waldman attended the meeting of creditors. The foregoing facts are taken from the docket entries in the bankruptcy case except for the appearance of Mr. Waldman at the meeting of creditors, of which there is no dispute.

Plaintiff's allegations that Defendants failed to disclose the Waldman Trust loan or the Waldman Trust as a creditor fail plausibly to state a claim under §727(d)(1). Neither Mr. Waldman nor the Waldman Trust is a party to this adversary proceeding. They do not contend they were misled by the disclosures in the schedules or failed to receive notice of the bankruptcy case. More importantly, the Amended Complaint does not allege that Plaintiff "did not know of such fraud [i.e., the allegedly fraudulent omission of the Waldman Trust from the Schedules] until after the granting of such discharge." §727(d)(1). Nor could it. Mr. Waldman received timely notice of this case and filed the Notice of Objection. He attended and actively participated at the meeting of creditors. More significantly, he was well aware of the manner in which the debt was listed on the schedules long before the discharge was entered. Finally, and perhaps definitively, the Waldman Trust received sufficient notice to file a timely proof of claim in the case. Accordingly, Plaintiff's allegations that the Waldman Trust loan was not disclosed "in the petition" does not provide an avenue for relief under §727(d)(1).

*Failure to Disclose the Property Owned by MBS.* The Amended Complaint alleges that Defendants own 100% of MBS. Amended Complaint, ¶ 17. It alleges that MBS, in turn, owned two parcels of real estate, referred to as the "Metropolitan Properties." *Id.*, ¶ 21. It then alleges that "despite their ownership of [MBS], the Defendants knowingly and fraudulently failed to

13

report in Schedule A … both [of the Metropolitan Properties] as properties in which Defendants hold rights and powers exercisable for their own benefit." *Id*., ¶ 22.

These allegations fail to state a claim under §727(d)(1) for two independent reasons. First, the Plaintiff seeks the revocation of Defendants' discharge on the basis that they failed to list on their Schedule A real estate owned by a corporate entity they properly listed on Schedule B.  Plaintiff's claim is based on the mistaken belief that a debtor must report on his or her personal schedules all of the assets owned by a corporate entity owned by that debtor.  The Amended Complaint admits on its face that the Metropolitan Properties are owned by MBS, not Defendants personally.  Defendants' obligation was to disclose on their Schedule B their ownership interest in MBS.  They did so, as the Amended Complaint acknowledges.[10]  *See* Amended Complaint, ¶ 20.  A debtor has no obligation to list on the schedules all of the assets owned by a corporate entity which is owned by the debtor.  Thus, the Amended Complaint fails to state a claim of fraud with respect to the alleged failure to disclose the Metropolitan Properties.

Second, even if the Debtors had such a disclosure obligation, the Amended Complaint candidly states that at "the first meeting of creditors held on July 3, 2009, Defendants disclosed for the first time to the Chapter 7 Trustee their ownership in the [Metropolitan Properties]." *Id*., ¶ 23.  The meeting of creditors was held more than 60 days before Defendants received their discharge. *Id.*  Thus the Amended Complaint does not allege, nor could it allege, that Plaintiff "did not know of such fraud [i.e., the failure to disclose the Metropolitan Properties in the schedules] until after the granting of such discharge."  §727(d)(1).    Accordingly, Plaintiff's

---

[10] The Defendants disclosed their ownership interest in MBS on Schedule B under "Interests in partnerships or joint ventures."  *See* Docket No. 19, p. 5 in Case No. 09-17489.

allegations that Defendants' failed to disclose the Metropolitan Properties that were owned by MBS do not provide an avenue for relief under §727(d)(1).

*Defendants' Claim for Architectural Fees.*  The Amended Complaint states that at the meeting of creditors, Shepard "falsely stated that he was owed approximately $70,000 - $80,000 by Plaintiff for architectural fees," and that Shepard has never been a licensed architect. Amended Complaint, ¶¶ 29-30.

The actual discussion at the meeting of creditors of the claim for architect work is as follows:

> MR. GREENFELD [the Trustee]: You list a claim for architect work against 10 West Chase Street LLC.  How much are you owed for architect work?
>
> MR. SHEPARD: It's  architectural  work,  marketing  work, construction consulting work.  I'd probably say about probably 70 to 80 thousand.

Transcript of First Meeting of Creditors ("Transcript"), June 3, 2009, p. 21.

Mr. Waldman was at the meeting of creditors, and the Amended Complaint states that he is the managing member of Plaintiff.  Accordingly, the Amended Complaint does not allege, nor could it, that Plaintiff "did not know of such fraud [i.e., the allegedly false claim for architectural fees] until after the granting of such discharge." §727(d)(1).  Moreover, this allegation does not meet the plausibility standard of *Twombly*.  Plaintiff seeks to revoke Shepard's discharge because at the meeting of creditors Shepard *disclosed* a potential asset of the estate, i.e., the claim for services.  It is incumbent on a debtor to disclose any potential asset of the Chapter 7 estate, even if the likelihood of recovery from it is remote, so that the trustee can determine whether to administer it.  Shepard personally stood to gain nothing by disclosing the potential fee, and his failure to disclose the potential fee may well have exposed him to a claim that he violated his

15

disclosure obligations.   Therefore, this allegation cannot provide the basis for a revocation of discharge under §727(d)(1).

*The Real Estate Commission*.   The Amended Complaint alleges that, for the first time at the meeting of creditors, Defendants disclosed their entitlement to a real estate commission from the sale of one of the Metropolitan Properties.  *See* Amended Complaint, ¶ 24.  But Defendants' alleged failure to disclose the "entitlement" to the commission cannot provide the basis for a revocation of discharge under §727(d)(1).  Mr. Waldman was at the meeting of creditors, and the Amended Complaint states he is the managing member of Plaintiff.  Accordingly, the Amended Complaint does not allege, and cannot allege, that Plaintiff "did not know of such fraud [i.e., the alleged failure to disclose the entitlement to a real estate commission] until after the granting of such discharge."  §727(d)(1).

*Failure to Produce Books and Records of 10 W. Chase*.  The Amended Complaint alleges that Shepard failed to produce the books and records of 10 W. Chase, LLC.  Specifically, the Amended Complaint alleges that Plaintiff requested the documents on three separate occasions: (1) by letter dated June 9, 2009 to the Chapter 7 Trustee; (2) at the first meeting of creditors; and (3) in discovery requests served in this adversary proceeding.  *See* Amended Complaint, ¶¶ 35-38.

Before turning to these specific allegations, the Court notes that Plaintiff made this very same claim concerning Shepard's failure to produce the books and records in the Notice of Objection, filed on June 10, 2009:

> Moreover, Debtor has failed to produce and wrongfully withheld the books and records of 10 W. Chase LLC and SB Fleet LLC so that the total extent of his fraud and theft has not been determined.

16

Notice of Objection, p. 1.  Thus, to the extent that Plaintiff relies on the alleged failure of Shepard to produce books and records of these related entities, Plaintiff had direct knowledge of this claim at least 7 weeks prior to the deadline to file a §727 complaint objecting to discharge on that basis.  Plaintiff's knowledge alone is sufficient to dismiss the §727(d)(1) claim to the extent it is based on Defendants' alleged failure to produce books and records 10 W. Chase, LLC.

Moreover, the allegations concerning the June 9, 2009 letter do not provide a basis to revoke the Defendants' discharge.  According to the Amended Complaint, Plaintiff sent the letter to the Chapter 7 Trustee.  Amended Complaint, ¶ 37.  The Amended Complaint does not allege it was sent to Defendants or their counsel.  Assuming for purposes of the Motion that the Trustee did not respond to the letter, his failure to do so cannot serve as a basis for revoking Defendants' discharge.

Further, Plaintiff's contention that it requested the books and records of 10 W. Chase, LLC at the meeting of creditors is directly belied by the transcript of that meeting:

> MR. WALDMAN: I'm Jerry Waldman, a creditor for -- a trustholder for SB Fleet and a partner in 10 West Chase.  We've done a tremendous amount of accounting work in the last two months and amongst the various entities money has been moved around, commingled. There's hundreds of thousands of dollars missing.  We are about to file a motion to dismiss the bankruptcy. I'm here just to ask you to continue this –

    *   *   *

Transcript, pp. 28-29.

> MR. WALDMAN: No, I don't [have any questions for Shepard].  I only ask that you continue the meeting.
>
> MR. GREENFELD: I heard that.  Ms. Burney, do you have any questions?
>
> MS. BURNEY: I would ask that it be continued also and I would also like –
>
> MR. GREENFELD: What is the basis for continuing it?

17

MS. BURNEY: The same.  There are extensive allegations of fraud that will be made and we're going to let the attorney make it.  It's not our place here today to make it.

MR. GREENFELD: Well, if it's not the place here today, then continuing this isn't the place either.  I mean you can certainly take their examination under Rule 2004 and you can have a whole day to ask them all the questions in the world.

*Id.*, pp. 32-33.

MR. FRIED [Defendants' Attorney]:  My suggestion is why don't you just do a 2004 exam?  This is not the right place for a 2004 exam.

MR. GREENFELD: Why don't you do this? I'm not going to conclude the meeting.  Have your attorney contact me –

MR. WALDMAN: I will.

MR. GREENFELD: And I will discuss it with him, but what I will do is not conclude the meeting today and just hold it open.

MR. WALDMAN: Thank you.

*Id.*, pp. 33-34.

MS. BURNEY: One other.  What are we going to have to do to get the financial documents for 10 West Chase and SB Fleet turned over since you are no longer a partner by the operating agreement?

MR. WALDMAN: **Our attorney will do that**.

*Id.*, p. 36 (emphasis added).

Thus, both the Trustee and Defendants' counsel invited Mr. Waldman, the Plaintiff's managing member, to conduct a Rule 2004 examination of Defendants, which would have obligated Defendants to produce requested documents and answer questions under oath.  The Plaintiff admits it did not request an examination.  Moreover, the Trustee specifically agreed to hold the meeting open to allow Mr. Waldman or his counsel to appear for further questioning of Debtors.  Again, the record reflects that no further meeting occurred.

18

Even more to the point, however, when the specific topic arose at the meeting as to "what are we [10 W. Chase, LLC and SB Fleet, LLC] going to have to do to get the financial documents for [those entities]…," Mr. Waldman terminated the discussion by stating "Our attorney will do that." Transcript, p. 36. And the transcript of the meeting of creditors reflects that, at the end of the meeting, the Trustee reviewed with Defendants and their counsel a list of specific documents that Defendants were required to produce as a result of the meeting. *See* Transcript, pp. 39-40. Nothing in the record suggests that Defendants failed to comply with these requests. Accordingly, the discussion of documents at the meeting of creditors does not provide any basis for revoking Defendants' discharge.

Finally, Plaintiff contends that Defendants failed to respond to its document request served in this adversary proceeding. The discovery was not served until February 2, 2010, some six months after the deadline for filing an objection to discharge. Moreover, Defendants have not had an obligation to respond to the discovery. Local Rule 7026-1(d) stays discovery pending the resolution of a Rule 12(b) motion. If Plaintiff believed Defendants failed to comply with a discovery request, its remedy would be to file a motion to compel, not to seek revocation of a discharge on that basis.

In sum, it is beyond dispute that the Plaintiff had actual knowledge of the facts upon which it relies in seeking to revoke the Debtors discharge. At the very least, however, "before discharge, the [Plaintiff knew] facts such that [it was] put on notice of possible fraud." *Mid-Tech Consulting, Inc.,* 938 F.2d at 888. Thus there is no basis for relief under §727(d)(1) and the Court shall dismiss the §727(d)(1) claims.

19

**Section 727(d)(2).**

Plaintiff also seeks to revoke Defendants' discharge pursuant to §727(d)(2), which provides as follows:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
> * * *
> (2) The debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee…

11 U.S.C. §727(d)(2).  Although subsection (d)(2) does not on its face contain the subsection (d)(1) element that "the requesting party did not know of such fraud until after the granting of such discharge," this does not give a party who is on notice of the alleged wrongdoing "the privilege to wait until after a discharge is granted to ask the court to revoke the discharge."  *In re Lyons*, 23 B.R. 123, 126 (Bankr. E.D.Va. 1982).  *See also Keeffe v. Natalie*, 337 B.R. 11, 14 (N.D.N.Y. 2006) ("Section (d)(1) requires a creditor to prove that he was unaware of the fraud prior to discharge, while section (d)(2) does not expressly state such.  Nevertheless, courts have read this requirement into section (d)(2)" (citations omitted)), *aff'd* 222 Fed. Appx. 97 (2d Cir. 2007).  *See also Collier on Bankruptcy* (16th Ed. Revised 2010), ¶ 727.17[4] (citing cases).

Further, §727(d)(2) applies only to property acquired by a debtor *after* the petition.  *See In re DaMaia*, 217 F.3d 838 (4th Cir. 2000) (table case) ("A careful reading of [§727(d)(2)] reveals that it applies only to property acquired by a debtor after his petition has been filed.").  As *Collier's* points out, §727(d)(2) "imposes a duty on the debtor to report to the trustee any acquisitions of property after the filing of the petition."  *Collier on Bankruptcy* (16th Ed. Revised 2010), ¶ 727.17[4].  This follows from the unambiguous statutory language.  The provision

applies where a "debtor acquired property that *is* property of the estate…" §727(d)(2) (emphasis added).   Obviously, property acquired prepetition would not be property of the estate when acquired and therefore is not included within the reach of the provision.   To be sure, other provisions of §727 apply to property acquired by a debtor prepetition.   Where a debtor fails to disclose property acquired within one year before filing a petition, §727(a)(2)(A) makes that a basis to deny the debtor a discharge.   Where a debtor fails to disclose property acquired after the filing of the petition, and the creditor knows of such failure before the discharge is granted, §727(a)(2)(B) makes that a basis to deny the debtor a discharge. And, as *Collier's* points out, where a debtor fails to disclose property acquired prepetition and the creditor does not know of such fraud until after the discharge is granted, §727(d)(1) makes that a basis to revoke the debtor's discharge.   *Collier on Bankruptcy* (16th Ed. Revised 2010), ¶ 727.17[4] (citing cases).

Applying these standards to the Amended Complaint, Plaintiff has failed to state a claim under §727(d)(2) for two reasons.  First, Plaintiff's §727(d)(2) claims are essentially based on the same factual allegations as its §727(d)(1) claims, and as set forth above, Plaintiff had notice of all of the claims before discharge.   Second, Plaintiff does not allege Defendants acquired any property postpetition that they failed to disclose.   Accordingly, the Court will dismiss Plaintiff's §727(d)(2) claims.

**Revocation of Defendant's Discharge pursuant to Rule 60(b).**

On two grounds, Plaintiff seeks to revoke Defendants' discharge pursuant to Rule 60(b), made applicable here by Fed. R. Bankr. P. 9024.  First, Plaintiff asserts that its failure to file a complaint within the Bankruptcy Rule 4004 deadline resulted from a mistake of its prior counsel, and therefore the discharge should be revoked under Rule 60(b)(1) due to excusable neglect or

under the catch-all provision of Rule 60(b)(6).[11]   Second, relying on *Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005), Plaintiff contends that the Court was not aware of the Defendants' alleged fraud when it entered the discharge order, and therefore the discharge should be revoked due to mistake and inadvertence.

"The remedy provided by [Rule 60(b)] is extraordinary and is only to be invoked upon a showing of exceptional circumstances."  *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 101-02 (4th Cir. 1979) (citations omitted).   "To bring [oneself] within Rule 60(b), the movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances."  *Werner v. Carbo*, 731 F.2d 204, 206-07 (4th Cir. 1984) (citation omitted).  Once the movant has made the required showing, it must then satisfy one the grounds for relief in Rule 60(b)(1)-(6).

Here, Defendants would be unfairly prejudiced by allowing Plaintiff to seek to revoke the Defendants' discharge under Rule 60(b).  Plaintiff missed the deadline for filing a complaint to determine dischargeability of its debt or to deny Defendants' discharge.  The Court concludes above that Plaintiff is unable to assert claims revoking the Defendant's discharge under 727(d).  This means that Defendants will not be facing a challenge to their discharge.  They would be unfairly prejudiced if Plaintiff were allowed to revive and assert such claims by the simple application of Rule 60(b).

---

[11] The applicable provisions of Rule 60(b) are:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1)  mistake, inadvertence, surprise, or excusable neglect;
> *    *    *
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1), (6)

Moreover, Plaintiff's bases for the application of Rule 60(b) are not persuasive. At its core, Plaintiff's argument is that the Court should apply Rule 60(b) to relieve Plaintiff of the oversight of its prior counsel. The Court is not unsympathetic to Plaintiff's plight. Plaintiff's prior counsel plainly did not understand basic bankruptcy procedure when he filed the Notice of Objection.[12] But Plaintiff received the order striking the Notice of Objection many weeks before the Rule 4004 and 4007 deadlines and the transcript of the meeting of creditors reveals the following discussion between the Chapter 7 Trustee and Mr. Waldman.

> MR. WALDMAN: I'm Jerry Waldman, a creditor for -- a trustholder for SB Fleet and a partner in 10 West Chase. We've done a tremendous amount of accounting work in the last two months and amongst the various entities money has been moved around, commingled. There's hundreds of thousands of dollars missing.
>
> We are about to file a motion to dismiss the bankruptcy. I'm here just to ask you to continue this –
>
> MR. GREENFELD: On what grounds?
>
> MR. WALDMAN: -- for 30 days.
>
> MR. GREENFELD: What are your grounds for dismissing the bankruptcy case?
>
> MR. WALDMAN: Fraud, misappropriation of funds.
>
> MR. GREENFELD: That's grounds for maybe objecting to his discharge.
>
> MR. WALDMAN: It will be filed in the next 10 days. I'm only here to ask you –
>
> MR. GREENFELD: Wait a minute.

---

[12] The Court previously concluded that "To be blunt, the Notice [of Objection] is so far removed from any recognized form of filing in a bankruptcy case that the Court is hard-pressed to state conclusively that it provides adequate notice of *any* request for relief." Memorandum of Decision Denying Motion for Leave to File Amended Complaint, Docket No. 15, pp. 7-8.

MR. WALDMAN: Okay, go ahead.

MR. GREENFELD: To dismiss the bankruptcy or deny him a discharge of his debts. They are dramatically different.

MR. WALDMAN: I'll tell you in a moment exactly.

* * * * * * * *

MR. WALDMAN: It's a notice of objection to the bankruptcy.

MR. GREENFELD:  **It sounds to me like you're objecting to discharge.  You can't do that by notice.  You've got to do it by complaint….**

Transcript, pp. 28-30 (emphasis added).  Thus Plaintiff was specifically told by the trustee that "you can't [object to discharge] by notice. You've got to do it by complaint." Transcript, p. 30.

It is doubtful that, given the trustee's express statement to Mr. Waldman, Plaintiff could meet the Rule 60(b)(1) standards for relief from its prior counsel's oversight due to excusable neglect.[13] The Fourth Circuit has held that "a lawyer's ignorance or carelessness do not present cognizable grounds for relief under Rule 60(b)." *Evans v. United Life & Accident Ins. Co*., 871 F.2d 466, 472 (4th Cir. 1989).  The Fourth Circuit recently reaffirmed this holding, citing case law from other circuits for the propositions that "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant" and that a "party has a duty of diligence to inquire about the status of a case." *Robinson v. Wix Filtration*, 599 F.3d 403, 413 (4th Cir. 2010) (quoting *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) and *Edward H. Bohlin Co., Inc. v. Banning Co., Inc*., 6 F.3d 350, 357 (5th Cir. 1993)).

---

[13] Plaintiff has submitted an affidavit stating that, after the Court struck the Notice of Objection, his attorney told him it was merely a "shot across the bow."  In light of the Court's ruling herein, the Court need not address the significance of this statement.

24

The Court need not reach this issue, however. Relief based on excusable neglect for missing the Rule 4004 deadline is not available to Plaintiff, whether sought through a motion to extend the time to file a complaint under Bankruptcy Rule 4004 or a motion to vacate the discharge order under Rule 60(b).

Although Plaintiff asks the Court to "revoke" Defendants' discharge under Rule 60(b), the appropriate remedy Plaintiff seeks is to vacate the discharge order. In the context of this case, if the Court were to "revoke" Defendants' discharge pursuant to Rule 60(b), the procedural effect would be that the discharge order would be vacated. That, however, would not adjudicate whether the Defendants are entitled to a discharge. A determination that Plaintiff should be relieved of its prior counsel's error does not mean the Defendants should be denied a discharge. Once the discharge order is vacated, Plaintiff would then need to file an adversary proceeding for a determination of whether the Defendants are entitled to a discharge.

The effect of vacating the discharge order, then, would be that the Rule 4004 deadline is extended for Plaintiff. Such a ruling would be inconsistent with the express language of Bankruptcy Rule 9006(b)(1) and (3). That Rule provides:

> (b) Enlargement
>
> (1) In general.
>
> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given there under or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
>
> *********

25

(3) Enlargement governed by other rules.

The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033, <u>only to the extent and under the conditions stated in those rules.</u> In addition, the court may enlarge the time to file the statement required under Rule 1007(b)(7), and to file schedules and statements in a small business case under § 1116(3) of the Code, only to the extent and under the conditions stated in Rule 1007(c).

Fed. R. Bank. P. 9006 (emphasis added).  Read together, Rule 9006(b)(1) and (3) do not allow the Court to extend the time to file a complaint objecting to discharge after the expiration of the specified period where the basis for the request is excusable neglect.  Although brought under Rule 60(b), rather than under Bankruptcy Rule 4004(a), that is precisely what Plaintiff requests here.  Plaintiff concedes that it neglected to timely file a complaint, but asks that it be excused from that oversight due to its prior counsel's error.  This relief is not available under Bankruptcy Rule 9006(b).

Plaintiff also asserts that a party is entitled to relief under Rule 60(b)(6) "where an attorney's malpractice deprives a party of an opportunity to present its claims or defenses." Amended Complaint, ¶ 55.  "Relief from counsel's error is normally sought pursuant to [Rule] 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect."  *In re Critical Care Support Services*, 236 B.R. 137, 142 (E.D.N.Y. 1999) (quoting *Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir.1986)).  More specifically, the Supreme Court has "held that a party may not avail himself of the broad 'any other reason' clause of [Rule] 60(b) if his motion is based on grounds specified in clause (1) – mistake, inadvertence, surprise or excusable neglect." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 n. 11 (1988) (citing *Klapprott v. United States*, 335 U.S. 601, 613 (1949) (internal quotations omitted).  And the Supreme Court has further explained that Rule 60(b)(1) and Rule 60(b)(6) "are mutually exclusive, and thus a

26

party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 393 (1993) (citations omitted). "If a party is partly to blame for the delay [or other error], relief must be sought within one year under subsection (1) and the party's neglect must be excusable." *Id*.

The Fourth Circuit has also recognized the mutual exclusivity of subsections (b)(1) and (b)(6). Referring to subsection (b)(6), the Fourth Circuit stated:

> While this catchall reason includes few textual limitations, its context requires that it may be invoked in only "extraordinary circumstances" when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5). *See Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863 n. 11, 864 (1988).

*Aikens v. Ingram*, 612 F.3d 285, 288-90 (4th Cir. 2010). Accordingly, because Plaintiff's claim for relief is based on excusable neglect, it is not entitled to seek relief under Ruled 60(b)(6).

The Court next turns to Plaintiff's contention that the Court should revoke the Defendants' discharge pursuant to the Seventh Circuit's decision in *Disch v. Rasmussen,* 417 F.3d 769 (7th Cir. 2005). There, the plaintiff filed a timely complaint to determine dischargeabiltiy of its debt under §523. *Disch*, 417 F.3d at 772-73. The bankruptcy court entered a general discharge of the debtor's debts, reserving the issue of the dischargeability of the plaintiff's debt to the adversary proceeding. Grounds to deny the debtor a discharge under §727 "first came to light" during the adversary proceeding, and at trial, the bankruptcy court allowed the plaintiff to amend the complaint to seek the denial of discharge under §727. *Id*. at 773. The bankruptcy court concluded that the debtor was not entitled to a discharge under §727(a), but that the plaintiff did not meet the requirements for revoking a discharge under §727(d). The bankruptcy court held that §727(d) did not exhaust the grounds for revocation, and revoked the

discharge under Rule 60, made applicable by Bankruptcy Rule 9024.[14] Specifically, the bankruptcy court concluded that the discharge order was entered on the court's own mistake, because if it had known of the debtor's actions, it would not have entered the discharge order. The Seventh Circuit affirmed, holding that the bankruptcy court did not abuse its discretion by ruling that it entered the discharge order by "mistake" or "inadvertence," and the revocation was a proper correction under Bankruptcy Rule 9024. *Id.* at 779. Significant here, the Court stated

> As long as the bankruptcy proceeding has not reached a final resolution, the bankruptcy court has the authority to reconsider the propriety of a discharge, as long as it does so in conformity with applicable restrictions under the statute and rules.

*Id.* at 775.

*Disch* is distinguishable on a number of grounds. First, in *Disch*, the reasons to deny the debtor's discharge "first came to light" after the discharge order was entered. Here, as has been shown, Plaintiff was well aware of the facts that form the basis for its claims long before the discharge order was entered, and filed the Notice of Objection weeks before that occurred. Second, in *Disch*, the plaintiff timely filed a §523 complaint, and the Seventh Circuit held that, under Fed. R. Civ P. 15, "allowing the §727 claim to relate back to the date of the complaint is proper so long as it was sufficiently linked to the claims raised there." *Id*. at 776. Here, Plaintiff failed to file timely a complaint under either §523 or §727. There is no complaint to which Plaintiff's §727 claims can "relate back" and be timely under Rule 4004. Third, in *Disch*, "the bankruptcy court and the district court found that [the debtor] failed to show that she was prejudiced by the addition of the §727 issue." *Id*. Here, this Court has concluded to the contrary. Fourth, in *Disch*, the Court revoked the discharge due to the "mistake" or "inadvertence"

---

[14] The bankruptcy court also concluded it had the authority to revoke the discharge under §105. The Seventh Circuit reversed on that issue. *Disch*, 417 F.3d at 778. The Plaintiff does not assert that this Court should revoke the Defendants' discharge under §105.

standards of Rule 60(b)(1), and the revocation was "in conformity with the applicable restrictions under the … rules." *Id*. at 775.   Here, as addressed above, extending the time to file a complaint objecting to discharge on the basis of excusable neglect is not permitted by Bankruptcy Rule 9006(b), and therefore would not conform to the "applicable restrictions under the … rules." *Id*. In sum, *Disch* does not stand for the principle that a creditor, with knowledge of its claims, can be excused by Rule 60(b) from its oversight of failing to file a timely complaint under Bankruptcy Rule 4004.

### Counts IV and V: Breach of Fiduciary Duty and Conversion, Misappropriation and Embezzlement.

In Count IV, Plaintiff seeks an award of money damages for breach of fiduciary duty.  In Count V, Plaintiff seeks an award of money damages for conversion, misappropriation of funds and embezzlement.[15]   In the Motion, Defendants contend that, once their discharge is upheld, these claims must be dismissed.  The Court agrees.

Defendants received their discharge on August 5, 2009.  A bankruptcy discharge extinguishes "the personal liability of the debtor with respect to any debt."   §524(a)(1). Therefore, Defendants' personal liability for Counts IV and V was discharged on August 5, 2009.  Plaintiff's effort to revoke the discharge has now failed.  Accordingly, Counts IV and V must be dismissed to the extent they seek damages from Defendants and not the recovery of estate property.

---

[15] Plaintiff also states in Counts IV and V that it seeks to recover property for the benefit of the estate under these counts. This portion of the Memorandum addresses only the claim for damages against Defendants personally, and not the claims to recover property. Those claims are addressed in the following section of this Memorandum.

**Counts II and III: Claims to Recover Property on Behalf of the Estate.**

In Counts II and III, Plaintiff seeks to recover property that it contends is estate property. Further, it appears that Plaintiffs seek to recover property for the estate in Counts IV and V as well. A claim to recover estate property in a chapter 7 case is controlled by the chapter 7 trustee. Accordingly, the Court will give the plaintiffs fourteen days to add the trustee as a party or face dismissal of these claims.

**CONCLUSIONS OF LAW**

For the foregoing reasons the Court will dismiss Count I with prejudice, dismiss Counts IV and V to the extent they seek money damages against the Defendants, and give the Plaintiffs fourteen days to add the chapter 7 trustee as a party to the remaining counts.

**Copies to:**

Office of the U.S. Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

Steven H. Greenfeld
Cohen, Baldinger & Greenfeld, LLC
7910 Woodmont Avenue
Suite 1103
Bethesda, MD 20814

Kenneth C. Crickman
1625 Massachusetts Avenue, N.W.
Suite 425
Washington, DC 20036

Michael G. Dana
The Fried Law Firm, P.A.
4550 Montgomery Avenue
Suite 710
Bethesda, MD 20814

Brian Shepard
205 Granville Drive

Bethesda, MD 20814

Manjot Bains-Shepard
205 Granville Drive
Bethesda, MD 20814

**End of Memorandum**